IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

VICTOR WALTON,

        Defendant.

Case No: 16-3077-03-CR-S-BCW

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through Timothy A. Garrison, United States Attorney for the Western District of Missouri, and Josephine Larison Stockard, Special Assistant United States Attorney, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on August 6, 2018. For the reasons set forth below, the Government recommends that this Court sentence the defendant to a total term of incarceration of 120 months – 60 months on Count 1 and 60 consecutive months on Count 16, and a five-year term of supervised release.

### I. BACKGROUND

On September 19, 2017, the defendant, Victor Walton, pleaded guilty before United States Magistrate Judge David P. Rush to Count One of the Indictment, conspiracy to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 846 and Count 16, possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). On October 4, 2017, this Court accepted the pleas of guilty. On December 4, 2017, the final Presentence Investigation Report (PSR, Doc. 169) was filed.

## II. LEGAL STANDARD

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), sentencing still begins with a properly calculated, advisory Sentencing Guidelines range. *See Gall v. United States*, 128 S. Ct. 586, 596 (2007); *Rita v. United States*, 127 S. Ct. 2456, 2464-65 (2007); *Booker*, 543 U.S. at 245-46; *United States v. Plaza*, 471 F.3d 928, 930 (8th Cir. 2006). Next, the Court must decide if a traditional departure under the Guidelines is appropriate, thus creating an advisory Guidelines sentencing range. *Plaza*, 471 F.3d at 930. After calculating the advisory Guidelines range, the Court considers that range, along with all the factors listed in 18 U.S.C. § 3553(a), in arriving at the final sentence. *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007); *Plaza*, 471 F.3d at 930.

## III. DISCUSSION

### A. Guidelines Calculations

The PSR finds the Guidelines imprisonment range for Count 1 is 60 months and the Guidelines range for Count 16 is 60 months consecutive to Count 1 and a Guidelines supervised release term of four to five years as to Count 1 and two to five years as to Count 16. (PSR 12, ¶¶ 68 and 72.) The Government concurs with these calculations.

### B. Statutory Sentencing Factors

This Court must "impose a sentence sufficient, but not greater than necessary" to address the factors enumerated in 18 U.S.C. § 3553, including the Guidelines issued by the U.S. Sentencing Commission. These factors include:

1. *Nature and Circumstances of the Offense*

Approximately 186 Americans die each day from a drug overdose, a total of 67,944 Americans died of drug overdoses in the period between September 2016 through September

2017.[1]  The statistics from the Centers for Disease Control and Prevention (CDC) paint a grim picture in relation to heroin and opioid overdoses.  The statistics show that between September 2016 and September 2017, the number of heroin deaths per annum had climbed to 15,301, and the total number of opioid deaths (including heroin, natural, synthetic, and semi-synthetic opioids) had jumped to 45,657.

Sadly, today's opioid epidemic has hit home in the State of Missouri.  The most recent statistics show that, in 2016, there were 908 Missourians who lost their lives due to an opioid overdose.[2]  One dose of heroin, which sells on the street for approximately $5 to $15, contains on average about .025 grams of heroin.  That individual dose can be fatal, depending on its purity.  To trigger a five-year mandatory minimum sentence, at least 100 grams of heroin must be involved in the offense, or in other words, approximately 4,000 doses of potentially fatal heroin.  *See* 21 U.S.C. § 841(b)(1)(B)(i).

This was a long-term investigation conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Springfield, Missouri, Police Department (SPD).  From the beginning, it was clear that Robinson was a major player in what was, at the time, a smaller market for heroin in Springfield.  After Robinson went to prison in February of 2015, Hinkle continued the heroin business in an ever-growing market of addicts and worked with Walton, Laura Brown, and Peter Kuhn.  In addition to selling heroin, Hinkle and Walton sold firearms to an undercover officer during the course of this investigation.  Drugs and firearms are often a lethal

---

[1]*Provisional Drug Overdose Death Counts*, the National Center for Health Statistics, the Centers for Disease Control and Prevention, available on from the CDC Website at https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm (accessed on April 26, 2018).

[2]Missouri state statistics are taken from the Missouri Department of Health and Senior Services Website, http://health.mo.gov/data/opioids/death-toll.php (accessed on April 26, 2018).

combination and the sale of drugs and firearms from one drug dealer to another represents a danger to those involved in the transaction and all of those around.

Hinkle and Walton's distribution of the heroin and firearms in this case occurred in a local grocery store parking lot. The danger of a drug deal gone bad is not isolated to the willing participants. The circumstances of Hinkle and Walton's sale of a firearm illustrates the danger, had one of the participants not been an undercover officer, of what they were doing in this case. Walton was also arrested early in this investigation with a firearm. For his distribution of heroin and the danger in which he placed others, Walton should be sentenced to a term of at least 120 months.

2. *History and Characteristics of this Defendant*

Walton has a criminal history category III by virtue of some less serious offenses and by being on supervision during the commission of this offense. (PSR 7-8, ¶¶ 32-39.) However, one of the most alarming things about Walton is his frequent contact with law enforcement reflected in the section about his arrests. (PSR 9-10, ¶¶ 45-53.) Walton was arrested first at the age of 18. (PSR 9, ¶ 45.) Then, in 2012, Walton was arrested in possession of heroin at the age of 22 and then was arrested six more times in the following two and a half years. Walton is now only 28 years old.

Due to his comparatively minor criminal history, Walton was released on bond after his arrest. Judge Rush did not revoke his bond, but Walton struggled while on supervision with drug use. It is clear that Walton's own drug use is a driving force behind some of his activity, but it is also clear that Walton has other choices and a supportive family. His distribution of drugs and combining them with the sale of firearms represents dangerous behavior far beyond is based on a need alone to feed his own addiction.

3. *Need to Promote Respect for the Law, Need to Afford Adequate Deterrence to Criminal Conduct, and Need to Protect the Public from Further Crimes of the Defendant*

This defendant showed a deep disrespect for the law in his distribution of heroin and firearms even after several contacts with law enforcement. A 120-month sentence promotes respect for the law and acknowledges the harm caused by this crime and the reason for the laws that punish this conduct.

A 120-month sentence will also protect the public from Walton. It is clear that Walton struggles with his own addiction issue, but his decision to distribute drugs and sell firearms was his own. A sentence of incarceration will protect the public from Walton.

4. *Need to Provide the Defendant with Education, Vocational Training, or Other Correctional Treatment*

Walton has his high school diploma and his PSR reflects that he was employed as an insurance agent. (PSR 11, ¶ 63 and 64.) He also has some training in auto mechanics. (PSR 11, ¶ 64.) Walton has expressed an interest in the RDAP program, and the Government agrees that it is critical that Walton learn to deal with his addiction if he is to be a productive member of society after his release.

## IV. <u>CONCLUSION</u>

Section 18 U.S.C. § 3553 requires this Court to impose a sentence that considers the factors above, including the advisory Guidelines range. The Government respectfully requests that the defendant's behavior and history, the need to promote respect for the law, the need to deter criminal conduct, the need to protect the public from the defendant, and any other statutory sentencing factors be considered in reaching an appropriate sentence.

The Government respectfully requests that this Court impose a sentence of 120 months' imprisonment.

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney

*/s/ Josephine L. Stockard*
JOSEPHINE L. STOCKARD, Mo. Bar #63956
Special Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417)831-4406

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 27th day of July, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Josephine L. Stockard*
JOSEPHINE L. STOCKARD